Filed 12/23/14  P. v. Marin CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> ROBERT J. MARIN, <br><br>     Defendant and Appellant. | D065081 <br><br><br> (Super. Ct. No. SCE324824 & SCE318222) |

APPEAL from a judgment of the Superior Court of San Diego, Allan J. Preckel, Judge.  Affirmed.

Nancy E. Olsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, Arlene A. Sevidal and Tami Falkenstein Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

In two consolidated superior court cases (Nos. SCE324824 and SCE318222), a jury convicted Robert J. Marin of first degree burglary (Pen. Code, § 459)[1] and Marin pled guilty to petty theft with a prior felony conviction (§§ 484, 666, subd. (b)(1)). The court found true allegations that Marin committed a felony while on parole (§ 1203.085, subd. (b)); committed an offense while released from custody on bail (§ 12022.1, subd. (b)); and had a probation denial prior (§ 1203, subd. (e)(4)); two prison priors (§ 667, subd. (b)); two serious felony priors (§ 667, subd. (a)(1)); and two strike priors (§§ 667, subds. (b)-(i), 1170.12 & 668). In a third case (No. SCE322799), the court found true one probation denial allegation (§ 1203, subd. (e)(4)); two prison prior allegations (§ 667.5, subd. (b)); and two strike prior allegations. The court sentenced Marin to a total of 26 years 8 months in prison for all three cases. Marin contends that there is insufficient evidence to support his burglary conviction because the evidence does not support a reasonable inference that he entered the subject residence with the intent to commit a theft. We affirm.

FACTS

Alice Campbell and her husband lived in a single-family home on a cul-de-sac in Escondido. On the morning of August 2, 2012 at about 9:00 a.m., Alice left home to go to the gym. Her husband had left home to go to work at 5:00 a.m. When Alice returned home around noon, she saw that a stained glass window pane on her front door was

---

[1]     All statutory references are to the Penal Code unless otherwise specified.

broken and that there was shattered glass from the broken window on the inside of the house in the front entry area. She also noticed drops of blood in the area of the shattered glass inside the house and in the area of the broken windowpane outside the house. The front door was secured with a deadbolt that required a key to unlock it from both the inside and outside. Alice did not leave a key in the inside lock because she generally entered and left the house through the garage and did not use the front door. If a key had been in the inside lock, a person could have reached through the broken door panel and unlocked the door from the outside.

Alice called 911 to report a burglary. A sheriff's deputy responded within 10 minutes. The deputy noted a drop of blood on the inside floor of the house in the area of the broken glass. He collected samples of the blood for DNA (deoxyribonucleic acid) testing. Alice told the deputy that she had searched the entire house and had found nothing missing. Further, there was nothing to indicate that someone had broken into the residence at an entry point other than the front door. The deputy also checked for other signs of forced entry and found none other than the broken window panel on the front door.

A detective with the San Diego County Sheriff's Department conducted a follow-up investigation of the burglary of the Campbell residence and identified Marin as a potential suspect. The detective obtained a search warrant to obtain a sample of Marin's DNA. He located Marin and told him that he was serving a warrant for Marin's DNA in connection with a residential burglary in which a window from the door was broken out

3

and there was a drop of blood inside the residence. The detective did not say anything about whether there had been entry into the residence or whether any property had been taken. Marin responded, "Don't you have to steal something for it to be a burglary?" DNA testing revealed that Marin's DNA sample matched the DNA in the blood collected from the crime scene.

Marin's girlfriend, Krystal Frias, testified for the defense. She had been Marin's girlfriend for two to three years and they had been living together in her mother's house for six to eight months. She testified that during that time, they both used methamphetamine, cocaine, heroin, and alcohol "mostly, like, every day, every day, all day" and both had become "unemployed drug addicts." Because their drug abuse got to a point where it was "out of control," Frias's mother told them they could not live in her home any longer. Marin and Frias eventually moved in with Marin's stepfather, and continued to abuse drugs. Frias testified that they spent between $50 to $100 every two days for methamphetamine, $20 a month on heroin, $20 a month on cocaine, and $20 a week on alcohol.

The night before the burglary, Marin and Frias stayed up all night and into the next morning doing drugs and drinking alcohol with friends and some of Marin's cousins at Marin's stepfather's house. Marin and Frias got into an argument at around 6:00 or 7:00 a.m., and Marin left the house. About an hour later, Frias drove around the area of the house looking for Marin. She found him between 9:00 and 10:00 a.m. walking "like he was all drunk" on a sidewalk near a Jack In The Box restaurant a few blocks from his

4

stepfather's house and about a mile and half from the Campbell residence. Frias noticed blood on Marin's right hand and asked him what happened. She testified that "he couldn't even answer" and that "[h]e was really out if it."

DISCUSSION

Marin contends that there is insufficient evidence to support his burglary conviction because there is no substantial evidence that he entered the Campbell residence with the intent to commit a theft.

"In reviewing a sufficiency of evidence claim, the reviewing court's role is a limited one. ' "The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]" ' [Citations.] [¶] ' "Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. . . . " ' " (*People v. Smith* (2005) 37 Cal.4th 733, 738-739.)

5

"The crime of burglary consists of an act—unlawful entry—accompanied by the 'intent to commit grand or petit larceny or any felony.' (§ 459.) One may be liable for burglary upon entry with the requisite intent to commit a felony or a theft (whether felony or misdemeanor), regardless of whether the felony or theft committed is different from that contemplated at the time of entry, or whether any felony or theft actually is committed." (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041-1042, fn. omitted.) The slightest entry by any part of the body or an instrument is sufficient to satisfy the element of unlawful entry. (*Magness v. Superior Court* (2012) 54 Cal.4th 270, 273.)

It is the prosecution's burden to "establish that a burglary defendant entered the premises with the intent to commit a felony or theft. Commonly, that intent must be inferred from the circumstances of the charged offense or offenses. [Citation.] ' "While the existence of the specific intent charged at the time of entering a building is necessary to constitute burglary in order to sustain a conviction, this element is rarely susceptible of direct proof and must usually be inferred from all of the facts and circumstances disclosed by the evidence." ' " (*People v. Holt* (1997) 15 Cal.4th 619, 669.)

We conclude that the evidence is sufficient to support the jury's finding that Marin entered the Campbell residence with the intent to commit theft. There was overwhelming evidence that Marin broke the glass pane out of the front door, which enabled him to reach the interior deadbolt lock. The element of unlawful entry was satisfied by Marin's hand entering the interior of the house through the broken out door panel. (*Magness v. Superior Court, supra,* 54 Cal.4th at p. 273.)

6

The jury's finding that Marin had the intent to commit theft when he forcibly entered the house is supported by the evidence that Marin and his girlfriend, Frias, were unemployed drug abusers who were spending between $50 to $100 every two days for methamphetamine, and were spending additional money for cocaine, heroin, and alcohol. The jury could reasonably infer that the cost of Marin's and Frias's drug addiction created a strong motive for Marin to break into the Campbell residence with the intent to steal money or valuable property, and that he would have gone into the house and committed theft if the interior deadbolt lock had not required a key to unlock it. The jury could further reasonably infer that Marin intended to steal from the house based on the evidence that he committed the offense during a time of day when the residents of the house were not likely to be home, and the fact that he chose a house on a cul-de-sac rather than a house on a street with through traffic, where there would be a greater likelihood of a burglary being witnessed.

Marin's conversation with the detective provides additional support for the jury's finding that Marin had the intent to steal when he broke the glass out of the Campbells' front door. The only facts that the detective disclosed about the case to Marin while executing the search warrant for Marin's DNA were that a window panel had been broken out of the door, and that there was a drop of blood inside the residence. Marin immediately asked, "Don't you have to steal something for it to be a burglary?" Marin's response to the detective implicated him in the offense by revealing that he knew that nothing had been taken from the residence in question—knowledge that he could have

7

obtained only if he were the perpetrator of the offense. In addition, the fact that Marin's response focused on whether anything had been stolen from the residence supports a reasonable inference that he intended to steal from the residence at the time he unsuccessfully attempted to gain full entry into it. We are satisfied that a rational jury could find beyond a reasonable doubt that Marin broke into the Campbell residence with the intent to commit theft.

## DISPOSITION

The judgment is affirmed.


_____
AARON, J.

WE CONCUR:


_____
HALLER, Acting P. J.


_____
O'ROURKE, J.

8